# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION
# CIVIL ACTION NO. 5:12-CV-202

| | |
|---|---|
| APRIL SMITH, ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| JASON MUNDAY, in his individual and ) | |
| official capacities as an employee of the City ) | |
| of Lincolnton, CHARLES MCGINLEY, in ) | |
| his individual and official capacities as an ) | |
| employee of the City of Lincolnton, BRIAN ) | |
| GREENE, in his individual and official ) | |
| capacities as an employee of the City of ) | |
| Lincolnton, MARK LESASSIER, in his ) | |
| individual and official capacities as an ) | |

| employee of the City of Lincolnton, | ) |
| RODNEY JORDAN, in his individual and | ) |
| official capacities as an employee of the City | ) |
| of Lincolnton, CITY OF LINCOLNTON, | ) |
| LINCOLNTON POLICE DEPARTMENT, | ) |
| JOHN AND JANE DOE, AND RUFUS | ) |
| LYNCH, SR., | ) |
|  | ) |
| **Defendants.** | ) |
|  | ) |

**BEFORE THE COURT** is Defendants Jason Munday, Charles McGinley, Brian Greene, Rodney Jordan, Lincolnton Police Department, and the City of Lincolnton's[1] Motion for Summary Judgment.[2] (Doc. 23). Plaintiff April Smith has responded to this motion, (Doc. 31), and the Defendants have replied to her response, (Doc. 32). Afterwards, Plaintiff filed a second document entitled "Plaintiff's Memorandum of Law in Opposition[]" of Defendants' Motion for Summary Judgment. (Doc. 33). Defendants' Motion to Strike this document is also before the Court. (Doc. 34). The Court will first address the motion to strike.

I. **MOTION TO STRIKE**

Defendants desire this Court to strike the Plaintiff's "Memorandum of Law in Oppositions [*sic*] of Defendants' Motion for Sumarry [*sic*] Judgment." (Doc. 33).

Under Local Rule of Civil Procedure 7(E) "[r]esponses to motions, if any, shall be filed within fourteen (14) days of the date on which the motion is served . . . . A reply to the response to a motion, if any, shall be filed within seven (7) days of the date on which the response is served." "Local Rule 7.1(E) provides for an initial memorandum of law, a response, and a reply." *Whipple v. Brigman*, No. 3:12CV258, 2013 WL 566817, at *2 (W.D.N.C. Feb. 13, 2013). Local Rule 7.1(E) does not condone the filing of multiple "responses" as Plaintiff has

---

[1] The Court uses the phrase "individual defendants" to include the non-organizational defendants who are moving for summary judgment.
[2] Rufus Lynch is the only defendant who is named, aside from Lesassier, who has not joined this motion. He may have been mistakenly added to the Amended Complaint. QC Notice dated Jan. 13, 2014

2

done here. On July 30, 2014, Defendants filed their motion for summary judgment. (Doc. 23). On August 15, 2014, Plaintiff made a motion for extension of time to file a response. (Doc. 27). On September 11, 2014, Magistrate Judge Cayer denied this motion for extension of time because Plaintiff's failure to conduct discovery was not the result of excusable neglect. (Doc. 30). The next day, Plaintiff filed her first "Response," (Doc. 31) to which Defendants replied on September 22, (Doc. 32). Defendants specifically noted that Plaintiff filed to file any memorandum of law supporting her response. (Doc. 32). Inexplicably, Plaintiff then filed her second "Response" on October 16, 2014, over seventy days after the original motion for summary judgment was filed. (Doc. 33). Plaintiff has offered no reason why the Court should consider this in ruling on the motion for summary judgment. Accordingly, this Court **STRIKES** Plaintiff's Second Response (Doc. 33).

II. SUMMARY JUDGMENT

    A. Standard of Review

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In order to support or oppose a summary judgment motion, a party is required to cite to "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, . . . admissions, interrogatory answers, or other materials;" or show "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1); *Anderson v. Liberty Lobby,* 477 U.S. 242 (1986) (applying former version of Rule 56); *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986) (same). A genuine dispute

exists only if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson,* 477 U.S. at 248. In conducting its analysis, the Court views the evidence in the light most favorable to the non-moving party. *Celotex Corp.,* 477 U.S. at 325.

  B.  Facts

  In support of their Motion, Defendants filed the affidavits of Detective Jason Munday, Chief Rodney Jordan, and the confidential informant ("CI") who participated in the transaction which ultimately led to Plaintiff's arrest. Defendants also filed the case report related to Plaintiff and a third party, Justin Phillip Mayfield.

  On March 10, 2009, Defendants Munday and McGinley conducted an undercover investigation with the CI in Lincolnton. (Munday Aff., Doc. 23-1, at ¶ 5; CI Aff., Doc. 23-3, ¶¶ 3-4). The CI had been utilized many years by the Lincolnton Police Department. (Munday Aff., at ¶ 5). Munday and McGinley gave the CI sixty dollars ($60.00) in the form of three twenty dollar bills to purchase crack cocaine. (Munday Aff., at ¶ 5; CI Aff., at ¶ 6). The CI was wired with video and audio surveillance equipment. (Munday Aff., at ¶ 5; CI Aff., at ¶ 6). The CI engaged in drug purchases with two different people at 728 East Pine Street. (CI Aff., at ¶¶ 8-9). When the CI returned, he was searched and he was found with narcotics. (Munday Aff., at ¶ 6). The CI told Munday and McGinley that he purchased the crack cocaine from "April Smith" and Justin Phillip Mayfield. (Munday Aff., at ¶ 5; CI Aff., at ¶ 8). The CI told the officers that both individuals were of African-American descent. (Munday Aff., at ¶¶ 5-6; CI Aff., at ¶¶ 8, 11). Inside Munday's notes is the following notation "April Smith B/F skinny 40's 1 rock in plastic." (Doc. 23-1, at 20).

  The notation "skinny" did not make it into the narrative report or any other documentation. Detective Munday's Investigation Report, which appears to have been filled out

4

on March 10, 2009, lists Plaintiff as a suspect and lists her weight to be 130 pounds. (Doc. 23-1, at 35). Plaintiff was arrested on December 20, 2009 by Defendant Brian Green. (Munday Aff., at ¶ 10). The arrest report states that she weighed 166 pounds. (Doc. 23-1, at 39). On April 2, 2010, Munday looked up Plaintiff's criminal history. (Doc. 23-1, at 21). Her criminal record describes her as being 5 foot 8 inches and weighing 213 pounds. (*Id.*).[3] Other portions of the criminal record state that she is 170 pounds. (Doc. 23-1, at 27). Yet another part of the criminal record states that she weighs 125 pounds. (Doc. 23-1, at 26).

To oppose summary judgment, Plaintiff filed her own affidavit.[4] Plaintiff's affidavit establishes that she is an African-American female that weighed approximately two-hundred twenty (220) pounds on March 10, 2009. (Smith Aff., Doc. 31-1, at ¶¶ 3-5). She states that she does not know the CI and, on March 10, 2009, did not sell a controlled substance to him or anyone. (*Id.* at ¶¶ 3-4).

    C.    Overview

The Court will first address Plaintiff's cause of action stylized as "false arrest." Second, the Court will address Plaintiff's § 1983 official capacity claims against the individual defendants. Third, the Court will consider whether claims against the City of Lincolnton Police Department survive. Fourth, the Court will address the § 1983 claims against the City of Lincolnton. Finally, the Court will consider the remaining state claims asserted by Plaintiff.

---

[3] The criminal history indicates that Plaintiff has been convicted for prior drug offenses.

[4] Plaintiff's complaint was also purportedly verified. However, the verification states that April Smith "had read the . . . Complaint and is familiar with the contents thereof, that same is true of her own knowledge except as to those matters as may therein be alleged upon information and belief and as to those matters, she believes them to be true." (Doc. 14-1). In *Walker v. Tyler Cnty. Com'n*, 11 Fed. App'x 270, 274 (4th Cir. 2001) (per curiam), the Fourth Circuit analyzed a nearly identical verification of a complaint. The Court recognized the general rule that "[a] verified complaint 'is the equivalent of an opposing affidavit for summary judgment purposes, *when the allegations contained therein are based on personal knowledge*." *Id.* at 274 (emphasis in original) (quoting *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991). However, the Court held that the "verified complaint cannot be considered the equivalent of an opposing affidavit" and was "mere pleading allegations" because "[t]he factual allegations in the complaint do not indicate which, if any, are based on personal knowledge." *Id.* at 274. Accordingly, this Court will not treat the Complaint as an affidavit. The Court notes that considering the Complaint would add little, if any, additional facts based on personal knowledge.

D.  Malicious Prosecution

The majority of Plaintiff's claims are stylized, and treated by the Defendants, as a "false arrest" claim pursuant to § 1983. "[A] public official cannot be charged with false arrest when he arrested a defendant pursuant to a facially valid warrant." *Porterfield v. Lott*, 156 F.3d 563, 568 (4th Cir. 1998); *Brooks v. City of Winston-Salem*, 85 F.3d 178, 184 (4th Cir. 1996); *see also Dorn v. Town of Prosperity*, 375 F. App'x 284, 288 (4th Cir. 2010). Such a warrant was present here. Therefore, Plaintiff fails to state a claim of false arrest.

However, "allegations that an arrest made pursuant to a warrant was not supported by probable cause, or claims seeking damages for the period after legal process issued, are analogous to the common-law tort of malicious prosecution." *Brooks*, 85 F.3d at 182. Malicious prosecution pursuant to § 1983 requires that "the defendant have seized plaintiff pursuant to legal process that was not supported by probable cause and [2] that the criminal proceedings have terminated in plaintiff's favor." *Massey v. Ojaniit*, 759 F.3d 343, 356 (4th Cir. 2014) (quoting *Durham*, 690 F.3d at 188); *see also Evans v. Chalmers*, 703 F.3d 636, 647 (4th Cir. 2012). "[W]here a law enforcement officer acts pursuant to a warrant, the critical question is whether the officer *could have reasonably thought* there was probable cause to seek the warrant." *Wadkins v. Arnold*, 214 F.3d 535, 539 (4th Cir. 2000) (emphasis in original).

Given that the defendants have only focused on the element of probable cause, the Court will do the same.

"Probable cause is determined from the totality of the circumstances known to the officer." *Brown v. Gilmore*, 278 F.3d 362, 367 (4th Cir. 2002). "For probable cause to exist, there need only be enough evidence to warrant the belief of a reasonable officer that an offense has been or is being committed; evidence sufficient to convict is not required." *Id.* "[A]n officer

6

is not required to 'exhaust every potentially exculpatory lead or resolve every doubt about a suspect's guilt before probable cause is established." *Miller v. Prince George's County, MD*, 475 F.3d 621, 630 (4th Cir. 2007) (quoting *Torchinsky v. Siwinski*, 942 F.2d 257, 264 (4th Cir. 1991)).

"Two factors govern the determination of probable cause in any situation: 'the suspect's conduct as known to the officer, and the contours of the offense thought to be committed by that conduct.'" *Brown*, 278 F.3d at 368 (quoting *Pritchett v. Alford,* 973 F.2d 307, 314 (4th Cir.1992)). "[I]t is irrelevant to the probable cause analysis what crime a suspect is eventually charged with . . . or whether a person is later acquitted of the crime for which she or he was arrested." *Sennett v. United States*, 667 F.3d 531, 535 (4th Cir. 2012) (quotations and citations omitted). "When a police officer protects a suspect's rights by obtaining a warrant from a neutral magistrate, the officer should, in turn, receive some protection from suit under 42 U.S.C. § 1983." *Torchinsky*, 942 F.2d at 262.[5] Obtaining a warrant from a magistrate weighs in favor of a finding that an officer acted with objective reasonableness. *Id.*

Smith has offered very little by way of evidence or argument that supports the proposition that the officers here lacked probable cause to support the warrant for her arrest. Namely, she avers that (1) she weighed 220 pounds on the date of the sale; and (2) she did not make the sale or even know who the CI was. There is no evidence supporting an inference that any of the Defendants knew or should have known that she weighed 220 pounds at the time of the buy.

---

[5] "Although [Munday's] warrant application is not in the record, [the Court] assume[s] . . . that it contained only the undisputed facts." *Merchant v. Bauer*, 677 F.3d 656, 665 (4th Cir. 2012); *see also Anderson v. Caldwell Cnty Sheriff's Office*, 524 Fed. App'x 854, 861-62 (4th Cir. 2013) ("[T]he fact that no contemporary record exists to show what Stafford said to the magistrate when seeking the arrest warrant does not undermine the showing in this record of the existence of probable cause."). Moreover, Plaintiff has not alleged that any Defendant has misled the Magistrate judge when seeking the warrant application.

7

The only evidence in front of the officers was provided by the CI. The CI was given cash and returned with drugs, specifically telling the officers that "April Smith" was one of the individuals who sold him the drugs. The CI also described "April Smith" as an African-American woman. The officers also obtained a warrant for Plaintiff's arrest. There is no evidence even hinting that the warrant was obtained an improper manner. Further evidence supporting a finding of probable cause is the fact that Plaintiff was found around eleven miles from the spot of the drug purchase.[6] *See Durham v. Horner*, 690 F.3d 183, 190 (4th Cir. 2012) (fact that plaintiff lived in area where CI engaged in drug purchases provides evidence supporting probable cause).

The only evidence not supporting a finding of probable cause is the difference in weight. The police report notes that the CI may have described Smith as "skinny" and Detective Munday lists "April Smith" at 130 pounds. However, when arrested, Plaintiff weighed 166 pounds. The fact Plaintiff alleges she weighed 220 pounds on the day in question does not affect the probable cause analysis because the officers did not have that information at any point. *See Brown*, 278 F.3d at 357.[7] Moreover, Plaintiff's weight varies throughout her criminal record.

When faced with discrepancies in physical descriptions, courts often look to whether the characteristic is mutable and the degree of difference in the information provided and that found. *See, e.g. United States v. Lopez*, 482 F.3d 1067, 1073 (9th Cir. 2007); *Maxwell v. City of Indianapolis*, 998 F.2d 431, 434-35 (7th Cir. 1993); *Devose v. Addison*, 172 F.3d 632, 633 (8th

---

[6] *Compare* (Doc. 23-1, at 39) *with* (Munday Aff., at ¶ 5). The Court utilized bing.com/maps and mapquest.com. The United States Court of Appeals for the Fourth Circuit has ruled that "geographical information is especially appropriate for judicial notice." *United States v. Johnson,* 726 F.2d 1018, 1021 (4th Cir.1984); *see also United States v. Lavender,* 602 F.2d 639, 641 (4th Cir.1979). Within the Fourth Circuit, district courts commonly take judicial notice of travel distances by using online resources for calculations. *Virginia Innovation Sciences, Inc. v. Samsung Electronics Co.*, No. 2:12CV548, 2014 WL 1308699 (E.D. Va. Mar. 31, 2014) (collecting cases).

[7] Furthermore, there is no evidence in the record supporting the assertion that Plaintiff protested her arrest and subsequent detention at any point.

Cir. 1999). Weight is such a characteristic and is prone to change, *Maxwell*, 998 F.2d at 435, especially over the nine months that elapsed between the original buy and arrest. Further, estimating a person's weight is difficult and discrepancies between the estimation and the truth are to be expected. WAYNE R. LEFAVE , 2 SEARCH & SEIZURE: A TREATISE ON THE FOURTH AMENDMENT § 3.4(c) (5th ed. Oct. 2014).

The Court recognizes that the law treats officers differently depending on their involvement in the case. *See Evans v. Chalmers*, 703 F.3d 636, 646-47 (4th Cir. 2012) (discussing the causation element of malicious prosecution). For example, investigating officers may have different information available to them than the arresting officer, who simply may have the warrant. *See Thompson*, 753 F.2d 363 (arresting officer had no knowledge of underlying investigation and application for otherwise facially valid warrant). Likewise, the arresting officer may find that certain facts and information provided about a suspect are blatantly contradicted by the appearance of the person they arrest.

In this case, Defendants Munday and McGinley were the investigating officers while Greene was the investigating officer. There are no allegations that Munday or McGinley provided misleading evidence to the magistrate to get the arrest warrant. *Durham*, 690 F.3d 183. Further, there is no evidence even linking McGinley to either the arrest or the procurement of the warrant for the arrest. Officer Green's sole involvement in this case was to arrest Plaintiff pursuant to a facially valid warrant that had her name on it. The Court notes that weight was not even present on the warrant. (Doc. 23-2, at 54). Even if weight were present on the warrant, the disparity is not so great as to expose Greene to liability.

Given the other indicia of probable cause, particularly the fact that the officers had a warrant and that a reliable CI specifically gave Plaintiff's name to the officers minutes after

9

completing a buy, the Court finds that no reasonable jury could find that reasonable officers, presented with the same evidence, would not find that probable cause existed to support Plaintiff's arrest. Accordingly, the Court finds that all of Plaintiffs federal claims are dismissed.

      E.      Plaintiff's § 1983 Official Capacity Claims Are Properly Conceived of As Claims Against the City of Lincolnton

Plaintiff has sued all named defendants in their official capacities. A suit against a public officer in his or her official capacity actually raise claims against the entity for which the officer works. *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). The City of Lincolnton is the entity that employed the individual defendants at the relevant time periods and is already joined. Accordingly, the official capacity claims are dismissed. *See Love-Lane v. Martin*, 355 F.3d 766, 783 (4th Cir. 2004) (affirming district court's dismissal of duplicative § 1983 claims).

      F.      Plaintiff's Claims Against the City of Lincolnton Police Department Are Dismissed

"Courts have repeatedly held that, in North Carolina, a municipal police department . . . is not an entity subject to suit." *Evans v. Griffin*, No. 7:13-CV-127-FL, 2014 WL 3921356, at *4 (E.D.N.C. Aug. 11, 2014) (citing *Moore v. City of Asheville, N.C.*, 290 F. Supp. 2d 664, 673 (W.D.N.C. 2003); *Wright v. Town of Zebulon*, 688 S.E.2d 786, 789 (N.C. Ct. App. 2010). Accordingly, all claims against the City of Lincolnton Police Department are **DISMISSED.**

      G.      Plaintiff's § 1983 Claims Against the City of Lincolnton Are Dismissed

A municipality cannot be held vicariously liable for the acts of its officers pursuant to § 1983. *Los Angeles Cnty., Cal. v. Humphries*, 131 S. Ct. 447, 452 (2010) (citing *Monell v. New York Dep't of Soc. Servs.*, 436 U.S. 648 (1978)). Rather, a municipality can only be held liable under § 1983 for its own violations of the law. *Id.*

To hold the City of Lincolnton liable for a constitutional violation under § 1983, "plaintiff must show that the execution of a policy or custom of the municipality caused the violation." *Love-Lane*, 355 F.3d at 782.

A predicate for a finding of a municipal liability is the alleged underlying constitutional violation. Plaintiff has not shown an underlying constitutional violation. Accordingly, all claims against the City of Lincolnton are dismissed.

### H. State Claims Against Defendants are Dismissed

#### 1. Individual Capacity Claims Are Dismissed

In addition to her § 1983 claims, Plaintiff also brings state claims. Specifically, Plaintiff brings claims of false imprisonment, negligence, negligent supervision, and assault.

Under North Carolina common law, police officers are considered public officials. *Schlossberg. Goins,* 540 S.E.2d 59, 56 (N.C. Ct. App. 2000). "[A] public official is [generally] immune from personal liability for mere negligence in the performance of his duties, but he is not shielded from liability if his alleged actions were corrupt or malicious or if he acted outside and beyond the scope of his duties." *Id.* "[P]olice officers enjoy absolute immunity from personal liability for their discretionary acts done without corruption or malice." *Id.* An officer acts with malice if the act is "(1) done wantonly, (2) contrary to the actor's duty, and (3) intended to be injurious to another." *Brown v. Town of Chapel Hill*, 756 S.E.2d 749, 755 (N.C. Ct. App. 2014) (quoting *In re Grad v. Kaasa*, 321 S.E.2d 888, 890 (N.C. 1984)). "An act is wanton when it is done of wicked purpose, or when done needlessly, manifesting a reckless indifference to the rights of others." *Id.* (quoting *Yancey v. Lea*, 550 S.E.2d 155, 157 (N.C. 2001)). An act is done with the intent to injure when the "officer's actions were so reckless or so manifestly indifferent to the consequences . . . as to justify a finding of [willfulness] and wantonness equivalent in spirit

11

to an actual intent." *Id.* (quoting *Wilcox v. City of Asheville*, 730 S.E.2d 226, 231 (N.C. Ct. App. 2012)). Mere unsupported allegations will not show a wantonness or intent. *Id.* at 757.

Public official immunity applies to claims of negligence, assault, false imprisonment, false arrest, and malicious prosecution. *Id.; Campbell v. Anderson*, 576 S.E. 2d 726, 730 (N.C. Ct. App. 2003).

No evidence of malicious or corrupt conduct has been presented by Plaintiff. Rather, defendants have provided reasonable explanations for their conduct which Plaintiff has failed to rebut. *See Campbell*, 576 S.E.2d at 730. Given that Plaintiff has failed to produce any evidence on this element, the Court finds that all state law claims must be dismissed against the individual defendants. Plaintiff's unsupported allegations will not suffice to show wantonness or intent

.

2. Negligent Supervision Claims Are Dismissed

Plaintiff also alleges that Defendants City of Lincolnton and Chief Jordan are liable pursuant to a negligent supervision theory. (Doc. 14, at ¶ 63). In order to prove a claim of negligent supervision, Plaintiff "must prove that 'the incompetent employee committed a tortious act resulting in injury to plaintiff and that prior to the act, the employer knew or had reason to know of the employee's incompetency.'" *Smith v. Privette*, 495 N.C. App. 395, 398 (N.C. Ct. App. 1998) (quoting *Graham v. Hardee's Food Systems*, 465 S.E.2d 558, 560 (N.C. Ct. App. 1996)). Plaintiff has offered no evidence showing that the City of Lincolnton or Chief Jordan knew or had reason to know of any incompetency on the part of any individual defendant in this case. Rather, the only evidence that has been presented to the Court is from Chief Jordan's

affidavit which states that no officer has engaged in misconduct during his tenure. (Jordan Aff., Doc. 23-2, at ¶¶ 4-7). Accordingly, Plaintiff's negligent supervision claim is dismissed.

### 3. State Law Official Capacity Claims Are Dismissed

The public official doctrine does not apply to Plaintiff's claims for negligence, false imprisonment, and assault against individual defendants sued in their official capacities. *Thompson v. Town of Dallas*, 543 S.E.2d 901, 906 (N.C. Ct. App. 2001). However, Plaintiff's only asserted bases for these causes of action are predicated on a finding of a lack of probable cause. *See* (Doc. 31, at 2). Given that the Court has already found that probable cause existed, these claims also fail.

III. Notice to Plaintiff to Respond

Rufus Lynch is listed as "TERMINATED" on the docket. However, Plaintiff's amended complaint continues to name him as a defendant. The Court believes this to be an oversight, as claims against him were voluntarily dismissed. (Doc. 9). The Clerk has already asked whether or not Plaintiff intended to add Lynch again. *See* QC Notice dated Jan. 13, 2014. Plaintiff has not responded to this request. In order to clarify the docket, the Court hereby **ORDERS** Plaintiff to respond to this request.

**IT IS, THEREFORE, ORDERED THAT**

(1) Defendants Motion to Strike (Doc. 34) be **GRANTED**;

(2) Plaintiff's Second "Response in Opposition" (Doc. 33). is **STRICKEN** from the record;

(3) Defendants Jason Munday, Charles McGinley, Brian Green, Rodney Jordan, Lincolnton Police Department, and the City of Lincolnton's Motion for Summary Judgment (Doc. 23) is **GRANTED**;

(4) All claims against Defendants Jason Munday, Charles McGinley, Brian Green, Rodney Jordan, Lincolnton Police Department, and the City of Lincolnton are **DISMISSED**; and

(5) Plaintiff shall file a document with the Court indicating whether she intended to add Rufus Lynch as a defendant within two weeks.

Signed: December 23, 2014

Richard L. Voorhees
United States District Judge